### POSTAL TELEGRAPH–CABLE CO. v. BRUEN.

(Supreme Court, Special Term, Westchester County. April 14, 1896.)

EMINENT DOMAIN—DAMAGES—TELEGRAPH POLES ON PREMISES.

    The owner of residential property in the country is entitled to only nominal damages for the placing of 12 telegraph poles, 150 feet apart, on the highway in front of her premises, where it appears that, even when there is no foliage, not more than 2 poles can be seen from any one point at the house, and that only 3 poles are visible from the house altogether, and that, in erecting the poles and stringing the wires, no trees were cut to such an extent as to injure their value or appearance; and none of the witnesses testify that the value of the premises after the erection of the poles is less than before, though several testify that the damage done to the premises was from $3,000 to $5,000.

Proceeding by the Postal Telegraph-Cable Company to acquire by eminent domain the right to place and maintain 12 telegraph poles in front of defendant's premises.

The matter was heard before Messrs. James B. Lockwood, James. H. Moran, and Stephen A. Marshall, commissioners of appraisal, who made the following report:

This was a proceeding to acquire by the law of eminent domain the right to place and maintain 12 telegraph poles in front of the defendant's land, in the town of Searsdale. The property owned by the defendant is purely residential property, and is adapted for the country seat of a gentleman of wealth. The lawns are spacious, and are beautified by a growth of trees which years of care have brought to maturity; and the view from the house, in the direction of the Long Island Sound, is unsurpassed. The testimony of the witnesses on either side, as to the value of the property, was widely different; but the commission does not seem called upon to fix the value. The property is undoubtedly valuable; and to a person of wealth, desiring

an inland country seat, accessible to the railroad and to New York City, the highest sum fixed by the witnesses as to its value would probably not be extravagant. The poles erected by the plaintiff are of the average quality and style of telegraph poles. Some of them are set in a slanting position, probably owing to the fact that the highway opposite the premises in question runs on a curve and on a descending grade. The beaten track of the road does not run in the center of the highway, but is nearer to the fence line on the opposite side. The poles are about 150 feet apart. A personal inspection of the premises, at the season when there is no foliage on the trees, showed that at no one point of view from the house could more than two poles be seen, and that only three poles are visible from the house altogether. In the summer time it is probable that not a single pole could be seen from the house, owing to the trees and foliage. Owing to the distance of the beaten track from the fence, the plaintiff was enabled to set the poles so as to occasion but little trimming of the trees. There was a dispute as to one pole, whether it is on defendant's property or not, but it is assumed that it is on defendant's property. The defendant's witnesses testified that the damage to the property was from three to five thousand dollars; while plaintiff's witnesses testified that the poles did not cause any injury.

There can be no doubt that the use of the highways of the state for the construction and operation of telegraph and telephone lines is a legitimate use, subject to the right of the owner to compensation. Such use is not only authorized by the statute (Laws 1890, c. 566, § 102), but has received the sanction of the court of appeals (Eels v. Telegraph Co., 143 N. Y. 133, 38 N. E. 202). The rule to guide this tribunal in fixing the amount to be awarded to the abutting owner is the difference between the value of her property before the entry of the corporation and its present value. Railroad Co. v. Arnot, 27 Hun, 151; In re New York, W. S. & B. R. Co., 29 Hun, 609. The defendant's witnesses did not undertake to show such difference in the value of the property in question, but merely testified as a conclusion that the damage was from three to five thousand dollars. Neither of said witnesses testified that the value of the property was three or five thousand dollars less than before the erection of the poles. There is no question as to the ability and competency of the witnesses in question, and the conclusion to which the commission has arrived does not detract from their worth, or cast any reflection upon their testimony. It is sufficient to say that they were undoubtedly actuated by motives of sentiment in placing their estimate. Sentiment, however, has no place in a calm and deliberate examination of facts. The plaintiff must pay, and the defendant is entitled to receive, just what damage has been suffered. Anything else would be manifestly unjust. It is true that one would prefer that a telegraph line should be built on some other highway than that on which he lives; but it must be remembered that the telegraph is a public necessity, and its lines must be built upon some highway, and have a lawful right to occupy the same. Few of our main thoroughfares are exempt from the presence of poles, and it would be a difficult matter for a prospective purchaser to find an advantageous place of residence in the country free from the presence of telegraph lines.

As already seen, the poles in question do not obstruct any view from the defendant's house, and, with three exceptions, they are not visible therefrom. Neither do they interfere with her entrance to her property. Any element of damage, therefore, arising from obstructions to view or to entrance to the property, does not enter into this case. The prospect from the defendant's house which imparts value to the property is towards the north, east, and south, and is not obstructed in any degree by telegraph poles. What, then, is the defendant's damage in dollars and cents? The telegraph company has appropriated 12 parcels of the defendant's real estate, each of which is probably not more than 18 inches square and 3 or 4 feet deep. In an Illinois case (Telegraph Co. v. Katkamp, 103 Ill. 420), a finding of $38.50, as damages for a strip of land 18 inches wide extending across defendant's land, which was what is known as a "quarter section," was held to be manifestly against the evidence, and the judgment was reversed. In the case at bar it appeared that some branches had been cut off from the defendant's trees, to avoid contact with the wires, but not to such an extent

as to injure the value or appearance thereof. The conclusion to which the commission has come, therefore, is that under the circumstances, from the evidence produced and from their own inspection, the damage to the defendant is but nominal, and we have so fixed the same in our award.

In the case above cited,—Eels v. Telegraph Co.,—Judge Peckham, in writing the opinion of the court, uses the following language: "It [the company] has the power to take the land upon making compensation, and hence the refusal of an owner will not stop the proposed undertaking. The amount of compensation is not now the question, but that in many cases it can be anything more than merely nominal would seem to be a proposition which would not require great elaboration of argument to make plain. The use would frequently be but a technical encroachment upon the rights of the adjoining owner, and there would be but little to fear that anything more than nominal damages would be allowed." While this language is obiter, it cannot be said to have been improperly incorporated in the decision of the court, and loses none of its force for that reason. In Massachusetts the courts have held that the use of a highway for the purpose of placing telegraph poles thereon is but a newly-discovered method of exercising the old public easement, either for the transportation of property or transmission of intelligence; that such use is similar to, if not identical with, that public use of transmitting information for which the highway was originally taken, even if the means adopted are quite different from the post boy or mail coach. Therefore all appropriate methods must be deemed to have been paid for when the road was laid out, and the abutting owner is entitled to no additional compensation for the use of such highway for telegraph purposes. Pierce v. Drew, 136 Mass. 81. In another case—People v. Eaton (Mich.) 59 N. W. 147—the court says that, when lands were taken or granted for public highways, they were not taken for such use only as might then be expected to be made of them by the methods of travel or of the transmission of intelligence then in use, but for such methods as improvement and future discoveries might demand. In a Missouri case—Julia Building Ass'n v. Bell Tel. Co., 88 Mo. 258—the court says that the poles used by the complainant were a necessary part of the system. When they do not interfere with the owner's access to and the use of his lands, there is no reason why they should be held to constitute an additional servitude. There must be an injury to the present use and enjoyment of his land. They do not interfere with his coming or going at his pleasure when placed, as they can and must be so as to give him free access. Wherein, then, is the injury? Public convenience and necessity must control in all such cases. In a New Jersey case—Halsey v. Railway Co., 47 N. J. Eq. 380, 20 Atl. 859—the vice chancellor held that the erection of poles in a street for electric railway purposes imposes no additional burden for which the abutting owner is entitled to compensation, and that the slight obstruction of the street caused by poles for electric wires does the abutting owner no irreparable injury different from that suffered by the public at large, so as to entitle him to equitable relief.

The foregoing, together with other decisions in different states of the Union, to which it is unnecessary to refer, confirm us in the belief that the conclusion to which we have arrived is just and equitable.

Charles A. Dryer, for plaintiff.

Alexander J. Bruen (John F. Coffin, of counsel), for defendant.

DYKMAN, J. This is a motion to confirm the report of commissioners of appraisal, and the only objection to such confirmation which requires any attention has reference to the insertion, in the order appointing the commissioners, of the date for their first meeting. The commissioners, in their report, say they met on the day specified in the order, and it appeared upon the argument that the order as it was entered contained the date. My conclusion is that the object of the statute has been accomplished by the meeting of the

commissioners, and the objection has been waived by the appearance of the defendant, and by proceeding before the commissioners without raising the objection. The report must therefore be confirmed.